IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY DERRICKSON, | : | NO. 2:07-cv-1917-MB |
|    Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| ROBERT W. MYERS, | : | |
|    AND | : | |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF DELAWARE, | : | |
|    AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE STATE OF PENNSYLVANIA, | : | |
|    Respondents | : | |

<u>REPORT AND RECOMMENDATION</u>

CHARLES B. SMITH
CHIEF UNITED STATES MAGISTRATE JUDGE

  Currently pending before the Court is an Application for Relief from Order Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure. For the reasons which follow, it is recommended that the Application be denied.

I.  PROCEDURAL HISTORY

  Petitioner was tried before a jury in July of 1995 on charges relating to the shooting death of Michael Cassidy in Chester, Pennsylvania. Due to the jury's inability to reach a unanimous verdict, a mistrial was declared. A second jury trial was held from October 10, 1995 to October 12, 1995 before the Honorable William R. Toal, Jr. of the Delaware County Court of Common Pleas. On October 12, 1995, petitioner was convicted of second-degree murder and robbery, for which he was sentenced to mandatory life imprisonment.

Petitioner pursued a direct appeal to the Pennsylvania Superior Court raising two claims for review: (1) whether insufficient reasons were given by the Commonwealth to explain the removal of an African-American venireperson by peremptory challenge and (2) whether the trial court erred in permitting the Commonwealth to cross-examine its own witness when there were neither allegations of surprise nor an inconsistency. The Superior Court affirmed the judgment of sentence on November 13, 1996. Commonwealth v. Derrickson, 688 A.2d 1226 (Pa. Super. 1996) (Table). Thereafter, on May 15, 1997, the Pennsylvania Supreme Court denied petitioner's request for allowance of appeal. Commonwealth v. Derrickson, 695 A.2d 783 (Pa. 1997) (Table).

On March 18, 1996, prior to the disposition of his direct appeal, petitioner filed his first petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.* Upon appointment of counsel, however, he elected to withdraw his action without prejudice. Following conclusion of his direct appeal proceedings, petitioner filed an amended PCRA petition, on September 22, 1997, alleging ineffective assistance of counsel for failure to (1) investigate the facts adequately; (2) effectively cross-examine prosecution witness Harris regarding prior inconsistent statements and possible witness tampering; (3) request an instruction of an "incontrovertible physical fact" regarding identification of the firearm; (4) object to the prosecutor's summation; and (5) move to quash the prosecution's amended information, which reinstated the robbery charge dismissed at the preliminary hearing. By way of opinion dated December 29, 1997, the trial court denied these claims. On appeal, petitioner raised claims two, four and five, which the Superior Court rejected on June 11, 1999. Commonwealth v. Derrickson, 742 A.2d 202 (Pa. Super 1999) (Table). The Pennsylvania Supreme Court denied allowance of appeal on March 14, 2000. Commonwealth v. Derrickson, 758 A.2d 660 (Pa. 2000) (Table).

Petitioner subsequently filed a federal petition for writ of habeas corpus in this Court on July 24, 2000, which raised both exhausted and unexhausted claims. Derrickson v. Meyers, Civ. A. No. 00-3718 (Weiner, J.). On January 19, 2001, however, petitioner opted to withdraw his petition so as to exhaust state court remedies on all of his claims. He then filed a state habeas corpus petition, which the state court treated as a second PCRA petition He alleged that his second PCRA counsel was ineffective for failing to raise the issue that first PCRA counsel was ineffective for not filing an amended petition preserving nineteen claims of ineffective assistance of his direct appeal counsel. On January 3, 2002, the PCRA court dismissed the petition as untimely. Petitioner appealed, claiming that his state habeas petition should have been treated as an extension of his first PCRA petition rather than as a second PCRA petition. Nonetheless, the Superior Court denied relief on March 16, 2004.

Petitioner filed an amended petition for writ of habeas corpus in this Court on June 9, 2004, asserting that direct appeal counsel was ineffective for: (1) failing to assert trial counsel's ineffectiveness for not objecting to the reinstatement of the robbery charge; (2) failing to assert trial counsel ineffectiveness for failing to argue that the evidence was insufficient to support a conviction for second degree murder; (3) failing to assert trial counsel's ineffectiveness for unreasonably advising Derrickson not to testify; (4) failing to assert trial counsel's ineffectiveness for failing to impeach the credibility of Mark Harris with prior inconsistent statements; (5) failing to assert trial counsel's ineffectiveness for failing to cross examine Harris concerning an assault upon him by Commonwealth witness Frank Richardson; (6) failing to assert trial counsel's ineffectiveness for failing to object to the trial court's allegedly inadequate alibi instruction; (7) failing to assert trial counsel's ineffectiveness for failing to call character witnesses; (8) failing to assert trial counsel's ineffectiveness for failing to object to the prosecutor's summation; (9) failing to assert trial counsel's ineffectiveness for failing to object

to Harris' testimony as hearsay; (10) removal of the African-American juror was unconstitutional; (11) failing to assert trial counsel's ineffectiveness for failing to adequately cross-examine Harris regarding coaching of his testimony; (12) failing to assert trial counsel's ineffectiveness for failing to move to transfer the case to juvenile court; (13) failing to assert trial counsel's ineffectiveness for failing to provide adequate advice regarding accepting a plea bargain; (14) failing to assert trial counsel's ineffectiveness for failing to secure the testimony of Steven Kurek; and (15) failing to assert trial counsel's ineffectiveness for failing to request a jury instruction on voluntary manslaughter and incontrovertible physical facts. The court concluded that all but claims one, four and eight were procedurally defaulted and there was no resulting fundamental miscarriage of justice. With respect to the three non-defaulted claims, the court found that the claims were meritless and did not warrant habeas relief. Derrickson v. Meyers, Civ. A. No. 00-3718, 2004 WL 2600673 (E.D. Pa. Nov. 15, 2004). The United States Court of Appeals for the Third Circuit affirmed. Derrickson v. Meyers, No. 04-4497, 2006 WL 1140224, *2-4 (3d Cir. May 1, 2006).

On October 1, 2005, petitioner initiated another *pro se* PCRA action alleging after-discovered exculpatory evidence. The PCRA court determined that the petition was untimely and that the newly-discovered evidence exception did not apply. Following an appeal, the Superior Court affirmed on April 26, 2007 and denied reargument on June 13, 2007. Commonwealth v. Derrickson, 923 A.2d 466 (Pa. Super. 2007), reargument denied, (June 13, 2007).

Petitioner filed the instant Application for Relief from Order Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, raising two claims: (1) ineffective assistance of appellate counsel for failing to raise issues in petitioner's state court appeal related to his allegedly ineffective trial counsel, which this court ultimately found, in Civil Action No. 00-3718, to be procedurally defaulted; (2)

4

fundamental miscarriage of justice when the federal court did not review his Batson issues on the merits based on an incorrect finding of procedural default. By way of Order dated May 29, 2007, the Honorable Michael M. Baylson denied petitioner's first claim for relief, but permitted the second claim to proceed for consideration on the merits, referring it to the undersigned for report and recommendation. It is to this latter claim that we now turn.

II.     STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court interpreted this statute and more clearly defined the two-part standard of review in Williams v. Taylor, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000). Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." Id. at 405. Pursuant to the second prong, a state court decision can involve an unreasonable application of Supreme Court precedent: (1)

"if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." Id. at 407-408. Under this clause, however, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410.

III.   MERITS

In his sole cognizable claim, petitioner alleges that the prosecutor at his trial improperly used a peremptory challenge to remove an African-American venireperson during voir dire. He goes on to argue that, upon objection by the defense, the prosecutor failed to provide sufficiently race-neutral reasons for the strike.

In Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), the United States Supreme Court recognized that "[a] defendant has no right to a 'petit jury composed in whole or in part of persons of his own race,'" but is entitled "to a jury whose members are selected pursuant to non-discriminatory criteria." Id. at 85-86 (citations omitted). Accordingly, it created a three-prong analysis to analyze a claim of purposeful discrimination in the selection of petit juries. First, the challenging defendant must make a *prima facie* showing of a violation, which requires the following:

> the defendant first must show that he is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." . . . Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

Id. at 96 (internal citations omitted); see also Holloway v. Horn, 355 F.3d 707, 728 (3d Cir. 2004) ("The defendant's burden at the initial [prima facie] stage is to show merely that jurors of his race have been struck and that the strikes are indicative of an improper motive."). Interpreting these standards, the Third Circuit Court of Appeals adopted a non-exhaustive five factor test to determine whether the surrounding facts and circumstances raised an inference of discrimination, including: (1) how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen; (2) the nature of the crime; (3) the race of the defendant and the victim; (4) the pattern of strikes against racial group jurors in the particular venire; and (5) the prosecutor's statements and questions during selection. Jones v. Ryan, 987 F.2d 960, 971 (3d Cir. 1993). Notably, "a defendant's Batson objection need not always be based upon a 'pattern' of strikes; it can be based, for example, on a single strike accompanied by a showing that the prosecutor's statements and questions to the juror (or to prior jurors) support an inference of discrimination." Holloway v. Horn, 355 F.3d at 728. "[A] prosecutor who intentionally discriminates against a prospective juror on the basis of race can find no refuge in having accepted other venirepersons of that race for the jury." Id. at 720.

If the defendant succeeds, the second step of Batson requires that the prosecution articulate a race-neutral explanation for the manner in which he exercised his peremptory challenges. Batson, 476 U.S. at 94; United States v. DeJesus, 347 F.3d 500, 506 (3d Cir. 2003). This prong "does not demand an explanation that is persuasive, or even plausible . . . 'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem, 514 U.S. 765, 768, 115 S. Ct. 1769 (1995) (quoting Hernandez v. New York, 500 U.S. 352, 360, 111 S. Ct. 1859 (1991)); see also Bounds v. Taylor, 77 Fed. Appx. 99, 106, 2003 WL 22325312, *7 (3d Cir. 2003). Finally, the trial court must determine whether, considering the persuasiveness of the justification

7

offered by the prosecutor, the defendant has proven purposeful discrimination. <u>Purkett</u>, 514 U.S. at 768.

Upon consideration of this precise claim during post-sentence motions, the trial court reasoned as follows:

> In the instant case, the challenger of the peremptory strike has failed to establish a <u>prima facie</u> case of racial discrimination. It is clear that the defendant, Rodney Derrickson, is a member of a cognizable racial group, namely the African-American race. Furthermore, the prosecutor did use one peremptory challenge to strike a member of the African-American race, juror #24 (672). [footnote omitted]. There were only two other members of the African-American race on the jury panel, juror #15 (513) and juror #29 (719). During the course of jury selection, juror #15 (513) indicated that she had some prior knowledge or information about the case, that she had been a victim of a crime and that she was under a doctor's care for tendinitis in her ankles and could not sit for long periods of time. The court excused juror #15 (513) with the agreement of counsel for both the defendant and the Commonwealth. Significantly, juror #29 (719), a member of the African-American race, was not disqualified for cause nor struck by the prosecution. This individual became the twelfth member of the jury and participated in the verdict. For the foregoing reasons, this court concludes that the defendant has been unable to identify any reasons or facts to establish a <u>prima facie</u> case of racial discrimination.
>
> The defendant also contends that the prosecutor's use of a peremptory challenge to strike juror #24 (617), a member of the African-American race, was discriminatory and the prosecution gave an insufficient explanation for striking this juror. The defendant's argument is not persuasive. The prosecutor struck the juror because of her age. She was seventy-six years old, and the prosecutor was concerned with her ability to pay attention. The prosecutor explained that he felt the prospective juror looked bewildered. In light of her age, he argued she was fifty to sixty years older than most of the witnesses for the Commonwealth in the case. The victim's behavior in leaving his family at home and driving to a Chester housing project to purchase drugs at 5 A.M. was a concern for the prosecutor. He felt that considering the juror's age and appearance she might disapprove of the Commonwealth's victim (N.T. 10/10/95, pages 47, 48). The prosecutor further stated that many of his witnesses were African-Americans and he had no reason to strike a prospective juror because of race but used his peremptory challenge solely for the reasons stated to the trial court. This court finds that the reasons advanced by the prosecutor are race neutral and do not suggest discriminatory intent on his part.

Trial Court Opinion (March 1, 1996), pp. 5-6. On appeal, the Superior Court expressly agreed with the trial court's finding of no discriminatory intent and affirmed the trial court's ruling.

Deferring to the state court's findings of fact, pursuant to 28 U.S.C. § 2254(e)(1), this Court

deems the state court decision to be neither contrary to nor an unreasonable application of federal law. As a primary matter, we agree that petitioner has failed to establish a *prima facie* case. Of the three African-American venirepersons on the jury, one was excused for cause, one became a member of the jury and the third was struck by peremptory challenge. While a defendant may base a <u>Batson</u> claim on a single strike, and need not rely on a pattern of strikes, he must at least point to statements or questions by the prosecutor to support an inference of discrimination. <u>Holloway</u>, 355 F.3d at 728. Petitioner has failed to anything that would even remotely suggest improper motive. Indeed, the fact that many of the Commonwealth's witnesses were African-American belies discriminatory intent.

Moreover, even assuming *arguendo* that petitioner could prove a *prima facie* case, his <u>Batson</u> challenge fails at steps two and three. As required under step two, the prosecutor provided a persuasive and plausible explanation for the use of his peremptory on juror #24: she was older, seemed bewildered and may have, in light her age, disapproved of the victim's drug-purchasing activities. Such reasoning sufficiently meets the Commonwealth's burden to articulate a race-neutral reason for its use of peremptory challenges.

Under step three, we then ask whether the state court erred in finding that the Commonwealth's facially valid explanation for the peremptory challenge was not a mere pretext for discriminatory intention." <u>United States v. Uwaezhoke</u>, 995 F.2d 388, 394 (3d Cir 1993). Federal courts have generally agreed that lack of attentiveness and age are sufficient, nonracial reasons for use of peremptory challenges. <u>Messiah v. Duncan</u>, 435 F.3d 186, 200 (2d Cir. 2006) (recognizing inattentiveness as a valid reason); <u>Forrest v. Beloit</u>, 424 F.3d 344, 350 (3d Cir. 2005) (accepting as non-pretextual attorney's statement that he struck juror because she appeared inattentive and indicated she did not want to sit on jury); <u>United States v. Clemons</u>, 843 F.2d 741, 748-749 (3d Cir. 1988)

(recognizing age as a legitimate, race-neutral reason); United States v. Marrowbone, 211 F.3d 452, 456 (8th Cir. 2000) (noting that inattentiveness and demeanor can be race-neutral reasons);. Despite the fact that the ultimate burden of persuasion rests with petitioner, he has pointed to nothing to undermine the credibility of this explanation. Hardcastle v. Horn, 368 F.3d 241, 258 (3d Cir. 2001). As we then have no basis on which to deem the state court's ruling to be contrary to nor an unreasonable application of federal law, we deny habeas relief.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this *6th* day of *August*, 2007, IT IS RESPECTFULLY RECOMMENDED that the Application for Relief from Order Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure be DENIED. There is no probable cause to issue a certificate of appealability.

                                                 /s/ *Charles B. Smith*
                                                 CHARLES B. SMITH
                                                 CHIEF UNITED STATES MAGISTRATE JUDGE